[No. B009247. Second Dist., Div. One. Dec. 5, 1985.]

LOS ANGELES COUNTRY CLUB et al., Plaintiffs and Respondents, v. ALEXANDER H. POPE, as Tax Assessor, etc., Defendant and Appellant.

## COUNSEL

De Witt W. Clinton, County Counsel, and Orry P. Korb, Associate County Counsel for Defendant and Appellant.

Gibson, Dunn & Crutcher, Norman B. Barker, John L. Endicott and Stephen L. Tolles for Plaintiffs and Respondents.

## OPINION

**HANSON (Thaxton), J.—**

### INTRODUCTION

The question presented in this case is whether the "valuation rollback" provision of article XIII A, section 2, subdivision (a) of the California Constitution, part of the 1978 initiative popularly known as Proposition 13, presently applies to certain nonprofit golf courses owned and operated by plaintiff Country Clubs (plaintiffs) herein, in Los Angeles County.[1] Plain-

---

[1] Included are the Los Angeles Country Club, Bel-Air Country Club, Brentwood Country Club, El Caballero Country Club, Friendly Hills Country Club, Glendora Country Club, Hacienda Country Club, Hillcrest Country Club, Oakmont Country Club, Rolling Hills Country Club, San Gabriel Country Club, Virginia Country Club and Wilshire Country Club, each a nonprofit corporation.

tiffs brought this action for declaratory relief to resolve the question stated above, pursuant to Revenue and Taxation Code section 4808.[2] Named as defendant was Alexander H. Pope, Tax Assessor of the County of Los Angeles (Pope).

Plaintiff Country Clubs sought relief from the assessment procedure adopted by defendant for the 1982-1983 taxable year whereby plaintiffs' golf courses were assessed at current value rather than that reflected "on the 1975-76 tax bill under 'full cash value'" as provided by article XIII A, section 2. Plaintiffs contended that defendant Pope was ignoring the limitation placed on the assessor by section 2, and thus violating the California Constitution.

Plaintiffs and defendant each sought summary judgment. The trial court awarded summary judgment to plaintiffs. Defendant appeals. We affirm.

## HISTORICAL BACKGROUND

Article XIII of the California Constitution contains 33 sections governing the taxation of property in California. Section 1 of article XIII contains the basic provisions concerning the valuation and taxation of such property, and provides as follows:

"§ 1. Unless otherwise provided by this Constitution or the laws of the United States:

"(a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is

---

[2]Added by Statutes 1981, chapter 550, section 1, page 2201, this section provides, in pertinent part, that "Notwithstanding any provision of law to the contrary, any taxpayer may, no later than 30 days after the delinquency date of a property tax bill or any installment thereof, seek declaratory relief in the superior court in the county in which the property is located alleging that the locally assessed property taxes have been illegally or unconstitutionally assessed or collected or are to be so assessed or collected. [¶] Any action alleging an illegal or unconstitutional method of valuation or similar matter shall name as respondent the assessor of the county in which the property is located. . . . The relief granted pursuant to this section shall be limited to a declaration that the taxes assessed or collected or to be assessed or collected are unconstitutional or otherwise legally invalid. [¶] This section shall not be interpreted to allow a taxpayer to postpone payment of property taxes pending the decision of the court . . . [and] shall be applicable only in instances where the alleged illegal or unconstitutional assessment or collection occurs as the direct result of a change in administrative regulations or statutory or constitutional law that became effective not more than 12 months prior to the date the action is initiated by the taxpayer. [¶] The procedure for obtaining a declaratory relief judgment under this section shall be the same as that used to obtain a writ of mandate."

All statutory references in this opinion shall be to the Revenue and Taxation Code unless otherwise stated.

prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value.

"(b) All property so assessed shall be taxed in proportion to its full value."

In 1960, section 2.6 of article XIII was added to the California Constitution, the so-called Golf Course Amendment. It provided that "In assessing real property consisting of one parcel of 10 acres or more and used exclusively for nonprofit golf course purposes for at least two successive years prior to the assessment, the assessor shall consider no factors other than those relative to such use. . . ." The section essentially restricted assessment of nonprofit golf courses such as plaintiffs' to their use as such, without permitting consideration of the "highest and best use" to which the underlying land might be put. Thus, this preferential tax treatment was afforded the nonprofit golf courses by application of "a value standard other than fair market value" as permitted in article XIII, section 1. It was upheld against constitutional attack in *Stevens* v. *Watson* (1971) 16 Cal.App.3d 629 [94 Cal.Rptr. 190], cert. den. (1972) 407 U.S. 925 [32 L.Ed.2d 811, 92 S.Ct. 2451]. The *Stevens* court declared that section 2.6 did not violate the federal mandate of equal protection of the laws, concluding that "there are a number of conceivable states of fact that provide rational support for its provisions," specifically "discouraging premature development of urban and near urban land and toward encouraging the preservation of open spaces." (*Id.*, at p. 635.)

Section 2.6, as set forth *ante,* was adopted by the voters on November 5, 1974 as section 10 of article XIII of the California Constitution.

In 1978, California voters passed Proposition 13, thereby amending the California Constitution to include articles XIII A and B. Sections 1 and 2 of article XIII A provide as follows:

"Section 1. (a) The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties. (b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective.

"Section 2. (a) The full cash value means the county assessor's valuation of real property as shown on the 1975-1976 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment. All real property not already assessed up to the 1975-1976 full cash value may be reassessed to reflect that valuation. For purposes of this section, the term 'newly constructed' shall not include real property which is reconstructed after a disaster, as declared by the Governor, where the fair market value of such real property, as reconstructed, is comparable to its fair market value prior to the disaster. . . . (b) The full cash value base may reflect from year to year the inflationary rate not to exceed 2 percent for any given year or reduction as shown in the consumer price index or comparable data for the area under taxing jurisdiction, or may be reduced to reflect substantial damage, destruction or other factors causing a decline in value. . . ."

In *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 219-220 [149 Cal.Rptr. 239, 583 P.2d 1281], the California Supreme Court upheld the validity of Proposition 13, and declared that " ' ' "[the] power of initiative must be liberally construed . . . to promote the democratic process." ' [Citations.]" Analyzing the new article created by Proposition 13, article XIII A, the court stated that "The new article contains four distinct elements. The first imposes a limitation on the *tax rate* applicable to real property: 'The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property . . . .' (§ 1, subd. (a).) (This limitation is made specifically inapplicable, under subd. (b), to property taxes or special assessments necessary to pay prior indebtedness approved by the voters.) The second is a restriction on the *assessed value* of real property. Section 2, subdivision (a), provides: 'The full cash value means the County Assessors valuation of real property as shown on the 1975-76 tax bill under "full cash value," or thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment . . . .' Subdivision (b) permits a maximum 2 percent annual increase in 'the fair market value base' of real property to reflect the inflationary rate." (Italics original.)

It was observed that section 2 substituted for annual reassessment a system of assessment and value based on the *date of acquisition;* selection of 1975-1976 values was likened to a "grandfather" clause provision of a type "routinely upheld by the courts." It was also pointed out that the California Constitution, in article XIII, section 1, permits the use of a value standard other than fair market value and has empowered the Legislature to grant exemptions to taxpayers when the circumstances indicate a need for preferential treatment. (*Id.*, at p. 236.)

*Amador* stressed that the nature of its inquiry into article XIII A was limited in the sense that there was much contained therein which would generate future litigation, to be resolved when necessary and appropriate.

With respect to real property already receiving preferential tax treatment, such as plaintiffs' golf courses, *ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 869 [210 Cal.Rptr. 226, 693 P.2d 811], discusses the administrative and legislative action taken in this regard after the passage of Proposition 13. "In June 1978 the Board [State Board of Equalization] adopted regulations . . . which, among other things, interpreted the applicability of the valuation rollback provision to certain kinds of specially assessed property. The Board concluded that whereas the provision applied to nonprofit golf courses . . ., enforceably restricted timberland . . ., and open space land and historical property . . ., it did not apply to state-assessed property. . . . [¶] In the following session the Legislature in turn addressed the question of the applicability of the provision. (Stats. 1979, ch. 242, § 4, p. 506.) *It overturned the Board's interpretation that the provision applied to nonprofit golf courses,* enforceably restricted timberland, and open space land and historical property, but let stand the interpretation that it did not apply to state-assessed property. It is clear that the Legislature acted with knowledge of the regulations. [Citation.]" (Italics added.)

What the Legislature enacted, in 1979, as an urgency measure effective July 10, 1979, was a four-part statute, Revenue and Taxation Code section 52, which provided, among other things, in subdivision (c), that "Notwithstanding any other provision of this division, property subject to valuation as a golf course pursuant to Section 10 of Article XIII of the California Constitution shall be valued for property tax purposes in accordance with such section."

Defendant, however, apparently agreed with the Board of Equalization that the section 2 "valuation rollback" of article XIII A did apply to golf courses such as plaintiffs', and accordingly assessed them using 1975-1976 base value figures and the 1 percent tax rate through and including the year 1981-1982. However, in the 1982-1983 tax year, defendant assessed the golf courses at one percent as provided in section 1 of article XIII A, but changed its assessments to reflect 1982-1983 value rather than the 1975-1976 base value limitation provided in section 2. Defendant took the position that section 1 was applicable to the golf courses but not section 2, because of the enactment by the California Legislature of section 52, subdivision (c) in 1979. In the trial court, defendant argued that this enactment, declaring that the assessment of special properties such as plaintiffs' golf courses was to be governed by section 10 of article XIII of the California

Constitution, removed plaintiffs' nonprofit golf courses from the application of section 2, the "valuation rollback" provision, and gave the green light to defendant to assess the golf courses at present golf course value, rather than 1975-1976 value. Defendant did not attack the continued restricted use basis upon which plaintiffs' courses are still assessed, but asserted that it was entitled to reassess at current values rather than at 1975-1976 value. Plaintiffs responded to this assessment action by filing this complaint for declaratory relief.

## THE TRIAL COURT'S JUDGMENT

Finding no inconsistency between section 10 of article XIII and article XIII A of the California Constitution, the trial court determined that both were "fully applicable to property tax assessments on nonprofit golf courses, and that the 1982-83 assessments attempted by defendant exceeded the maximum limitations of article XIII A, and disregarded section 2 of that article." To the extent of the excess, the assessments were deemed illegal and unconstitutional. It further declared that future assessments of the plaintiffs' golf courses should "be restricted to the full cash value of those properties as shown on the 1975-76 tax bill," subject to the adjustments permitted by section 2 of article XIII A and that the value shown on the 1975-1976 tax bill reflected the restriction allowed by section 10 of article XIII concerning the "use" on which value was to be based. The judgment further stated that defendant's attempt to interpret and apply section 52, subdivision (c) in such a way as to permit defendant to ignore the "valuation rollback" provision of article XIII A was illegal and unconstitutional. This appeal followed.

## CONTENTIONS

On appeal, defendant Pope contends: (1) that section 52, subdivision (c) was a declaration by the Legislature that, properly interpreted, Proposition 13 was not intended by the voters to apply to certain categories of property already receiving special tax treatment pursuant to the California Constitution at the time Proposition 13 was passed; (2) that section 52, subdivision (c) should govern our interpretation of this question, because of the strong presumption favoring legislative interpretation of constitutional provisions; and (3) consequently, that we should determine that section 10 operates exclusively of article XIII A and permits annual reassessment at current value by the defendant assessor of plaintiffs' nonprofit golf courses.

## DISCUSSION

### I.

Plaintiff Country Clubs observed below that section 52, subdivision (c) did not even mention Proposition 13, or article XIII A, and that of

course is true. The legislative history, however, supports the view that section 52, subdivision (c) was a legislative attempt to curtail the impact of the taxpayer revolt as expressed by the enactment of Proposition 13, by removing certain property from its application, including the plaintiffs' golf courses. We noted earlier the discussion in *ITT*, which describes the difference in interpretation and application which arose between the Board of Equalization and the Legislature.

We accept defendant's argument that section 52, subdivision (c) was intended to impact on the assessment of plaintiffs' nonprofit golf courses. That does not mean that such impact was achieved. All section 10 of article XIII has ever done is to declare that nonprofit golf courses such as plaintiffs' are to be assessed on the basis of their use *as golf courses* rather than on the basis that the land occupied might yield far more as the result of commercial development. Its reference to assessment years is understandable since it was enacted prior to XIII A by some four years; the reference is immaterial in considering the thrust of section 10.

It should be noted that article XIII, section 1 specifically states that "fair market value" *or other value standard* may be employed in assessment of property; the California Constitution contemplated that special assessment might be afforded certain property owners for reasons of public policy, and our Supreme Court recognized that in *Amador, supra,* 22 Cal.3d 208. However, we conclude that by declaring that nonprofit golf courses' tax treatment would be governed by section 10, the Legislature did not effectively preclude plaintiffs' property from the tax limitation protection provided by article XIII A.

## II.

Defendant Pope next contends that there is a strong presumption favoring legislative interpretation of constitutional provisions. The cases are legion which uphold the premise that administrative and/or legislative construction of constitutional provisions, or of statutes, are to be afforded great weight. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) § 70, pp. 3308-3309; *Amador, supra,* 22 Cal.3d at p. 245.) The premise, however, is based on some demonstrated ambiguity or conflict which makes construction or interpretation necessary. As *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802], cert. den. (1981) 450 U.S. 918 [67 L.Ed.2d 344, 101 S.Ct. 1362] observes, the courts do not undertake construction or interpretation unless there is such an ambiguity or conflict.

There is even a stronger presumption applicable to constitutional interpretation, specifically that constitutional provisions are to be harmonized

whenever possible (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]) and that a subsequent constitutional enactment will not be deemed to have repealed a previous one by implication, unless there is no alternative to that conclusion (*Lonergan, supra,* 27 Cal.3d at pp. 868-869.)

We perceive no ambiguity or conflict on the subject of specially assessed real property embodied in section 10 or article XIII A. It has been repeatedly emphasized that article XIII A applied to *real* property, not the mixture of personal and real property interests reflected on the unsecured property rolls of the counties (*Lonergan*) nor the state-assessed public utilities, subject to unit valuation taxation (*ITT*). As indicated previously, it contained a limitation on the tax rate as well as a restriction on the assessed value of real property, but it did not redefine value; we presume that voters understood that value, as used in the California Constitution, was not a totally fixed term. The best that can be said is that article XIII A said nothing about the real property in the counties which was already assessed on a restrictive use basis, but appears to apply to real property, including plaintiffs' golf courses. Viewed in this manner, we find no constitutional conflict.

Plaintiffs point out, too, that there is an equally reasonable rationale for the enactment of section 52, subdivision (c), a reiteration that the real property subject to restricted use valuation was to continue to be governed by section 10 rather than other sections of the Revenue and Taxation Code which mandate assessment at "highest and best use." (E.g., §§ 51, 110 and 110.1.)

Under these circumstances, we hold the strong presumption favoring legislative interpretation of constitutional provisions simply has no application.

III.

Defendant Pope relies heavily on the *ITT, supra,* 37 Cal.3d 859 decision, insisting that it was a holding that supports the legislative interpretation, as expressed in section 52, subdivision (c), that plaintiffs' nonprofit golf courses were not affected by article XIII A and thus may be reassessed on a "current-value-as-golf-courses" basis. *ITT* did not so hold. That case concerned the question of whether the voters intended article XIII A to apply to the unit taxation of public utilities. Unit taxation involves a completely different approach to assessment, utilizing personal property factors as well as real property factors. It is not valuation based upon equality and it is not under county control. The *ITT* case held that under all the circumstances, the enactment by initiative of article XIII A did not impact on the

unit taxation of state-assessed public utilities. In so holding, *ITT* declared that section 52, subdivision (c) was a legislative interpretation of the scope of article XIII A without approving or disapproving it. We note also *Shellenberger* v. *Board of Equalization* (1983) 147 Cal.App.3d 510 [195 Cal.Rptr. 168], which allowed reassessment of certain grazing land subject to the Williamson Act, a preferential assessment scheme, but that decision is based on a factual situation far different than the one before us.

We conclude that the trial court correctly decided that defendant's attempt to avoid the "valuation rollback" provision in section 2 of article XIII A by reinstating current value in its 1982-1983 assessments of plaintiffs' real property was both illegal and unconstitutional.

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Lucas, J., concurred.

A petition for a rehearing was denied December 26, 1985, and appellant's petition for review by the Supreme Court was denied March 20, 1986. Mosk, J., and Lucas, J., did not participate therein. Reynoso, J., was of the opinion that the petition should be granted.