[No. A029687. First Dist., Div. Four. Mar. 20, 1986.]

DREYER'S GRAND ICE CREAM, INC., Plaintiff and Respondent, v. COUNTY OF ALAMEDA, Defendant and Appellant.

**COUNSEL**

Richard J. Moore, County Counsel and James F. May, Deputy County Counsel, for Defendant and Appellant.

Cooper, White & Cooper, David W. Tucker and John Mahoney for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—This is an appeal from the trial court's judgment ordering a refund of property tax paid under protest.

The parties to the appeal are plaintiff Dreyer's Grand Ice Cream, a California corporation (hereafter respondent or Dreyer) and defendant County of Alameda (hereafter appellant or county). The stipulated facts reveal that from some time before March 1, 1975, until approximately May 4, 1983, Associated Food Stores, Inc., respondent's predecessor (hereafter Associated), owned a piece of real property at 1260 Whipple Road, Union City, Alameda County. Prior to March 1, 1975, Associated began to construct a cold storage warehouse on the property which was completed in December 1975. In April 1976 the county assessor physically inspected and appraised the completed warehouse as of March 1, 1976, the lien date for the 1976-1977 assessment year. This value was also used for the 1977-1978 assessment year.

On June 6, 1978, the voters of the State of California adopted the initiative measure, popularly known as Proposition 13 or the Tax Limitation Initiative, which amended the California Constitution by adding article XIII A. The latter, together with the implementing legislation, redefined the base year values of both the pre-1975 and post-1975 properties. (Cal. Const., art. XIII A, § 2; Rev. & Tax. Code,[1] § 110.1; see discussion, *infra*.) Based upon these new enactments, the county assessor reassessed the warehouse improvements for the 1978-1979 taxable year by adopting the value shown on the 1976-1977 assessment roll and adding a 2 percent inflation increase. The base year value, increased by the 2 percent inflation factor, was also used to determine the value of the improvements for the 1979-1980 and 1980-1981 taxable years.

In the fall of 1980 the county assessor audited the books and records of Associated and discovered that the improvements had been substantially underassessed for both 1976-1977 and all subsequent years. On February 26, 1981, the assessor, based upon the 1980 audit, revised the base year

---

[1]Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

value of the warehouse and made escape assessments for the years of 1977-1978, 1978-1979, 1979-1980 and 1980-1981.

Associated paid the increased taxes resulting from the escape assessments under protest in April 1981. Then it filed a timely notice of appeal to the County Assessment Appeals Board (Appeals Board) contending that the assessor did not have power to make escape assessments at all and in the alternative that the 1980 revaluation of the warehouse was not accurate. While the Appeals Board refused to grant relief on the first issue on jurisdictional grounds, it reduced the taxes payable on account of the escape assessments from the original $44,428.09 to $31,545.98. Thereafter, Associated filed a claim for a refund of taxes with the Board of Supervisors which was denied on August 17, 1982.

After exhausting all of its administrative remedies, Associated commenced a court action for a refund of tax paid under protest. During the pendency of the proceeding Dreyer, the new owner of the warehouse, was substituted as plaintiff. Dreyer first moved for summary judgment which was denied. The case then proceeded to trial at the conclusion of which the court, sitting without a jury, ruled in favor of Dreyer by holding in essence that the escape assessments in dispute were barred by the four-year statute of limitations. (§ 532.)

The principal issue on appeal is whether the four-year statutory bar prescribed for escape assessments begins to run from the time when the base year value of the property was originally determined under Proposition 13 (Cal. Const., art. XIII A, § 2) and its implementing legislation (§ 110.1), or whether it commences to run from the assessment year in which the property, in whole or in part, escaped taxation.

Appellant presses the point that the limitations period is to be measured from assessment years, rather than base years, and that we should give effect to the statute which speaks in terms of assessment year instead of base year. (§ 532.)[2] Respondent, in turn, argues that Proposition 13 brought about radical changes in our property taxation system which, of necessity, im-

---

[2]Section 532 provides: "Any assessment to which the penalty provided for in Section 504 must be added shall be made within six years after July 1 of the assessment year in which the property escaped taxation or was underassessed. Any other assessment made pursuant to Article 3 (commencing with Section 501) of this chapter, or pursuant to this article shall be made *within four years after July 1 of the assessment year* in which the property escaped taxation or was underassessed." (Italics added.) See also section 531 which provides in part that "[i]f any property belonging on the local roll has escaped assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment."

pacted the whole statutory scheme relating to property taxes. ██ One of the most important changes is that Proposition 13 made the base year value of the property the cornerstone of taxation which cannot be revised or altered under the guise of escape assessments. While escape assessments are still available to the taxing authority in case the property was underassessed or escaped taxation altogether, this power of the assessor must be exercised in harmony with Proposition 13. It follows that the four-year limit prescribed by the statute must commence from the base year and may not depend on the happenstance when the assessor discovers the error in assessment. For the reasons which follow, we agree with respondent and affirm the judgment.

First, prior to Proposition 13, real property was appraised for taxation purposes every year at its "fair market value" or "full cash value" on the lien date (i.e., Mar. 1 of the taxable year). (§§ 110, 401.3, 405, 405.5, 2192.) Proposition 13 changed this method in several respects. In the first place, the tax rate was limited to 1 percent of the "full cash value" of the property. (Cal. Const., art. XIII A, § 1.) In the second place, the determination of "full cash value" is no longer made yearly on the lien date, but is ascertained on a one-time, fixed basis which is called the base year value of the property. Thus, California Constitution, article XIII A, section 2, subdivision (a), spells out in part that *"[t]he full cash value means* the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, *the appraised value of real property when* purchased, *newly constructed,* or a change in ownership has occurred after the 1975 assessment." (Italics added.) Section 110.1, the implementing legislation, further clarifies that "(a) For purposes of subdivision (a) of Section 2 of Article XIII A of the California Constitution, *'full cash value'* of real property, including possessory interests in real property, *means* the fair market *value* as *determined* pursuant to Section 110 for either of the following: [¶] (1) The 1975 lien date. [¶] (2) *For property which is* purchased, is *newly constructed,* or changes ownership after the 1975 lien date, either of the following: [¶] (A) The date on which a purchase or change in ownership occurs. [¶] (B) *The date on which new construction is completed,* and if uncompleted, on the lien date. [¶] (b) The value determined under subdivision (a) shall be known as the *base year value* for the property." (Italics added.)

The case law in interpreting the above enactments emphasizes that Proposition 13 legislation has fundamentally affected our property taxation scheme by substituting for annual appraisal a system of assessment and value based on the date of acquisition. (*Los Angeles Country Club* v. *Pope* (1985) 175 Cal.App.3d 278, 283 [220 Cal.Rptr. 584].) As observed in *Ama-*

*dor Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281]: "article XIII A to the California Constitution . . . changes the previous system of real property taxation and tax procedure by imposing important *limitations upon the assessment and taxing powers* of state and local governments" (at p. 218, italics added) and "[b]y reason of section 2, subdivision (a), of the article, except for property acquired prior to 1975, henceforth all real property will be assessed and taxed at its value *at date of acquisition* rather than at current value (subject, of course, to the 2 percent maximum annual inflationary increase provided for in subdivision (b))." (*Id.* at p. 235, original italics.)

Thus, it is obvious that there is a noticeable discrepancy between the Proposition 13 enactments which determine the base year value of property at a fixed time and the escape assessment provisions of the Revenue and Taxation Code which, in contradistinction to the Proposition 13 legislation, appear to still provide for revaluation of properties on a yearly lien date basis for the purpose of capturing escape assessments. (§§ 531, 532, see fn. 2, *ante.*) The legal solution to this situation is equally obvious. It is well settled that where, as in the instant case, there is a conflict between several statutory provisions, they should be harmonized (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 611 [194 Cal.Rptr. 294]; *Kehrlein* v. *City of Oakland* (1981) 116 Cal.App.3d 332, 337 [172 Cal.Rptr. 111]); and the courts should construe conflicting statutes so as to uphold their constitutional validity inasmuch as it is possible (*People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149]; *Palermo* v. *Stockton Theaters, Inc.* (1948) 32 Cal.2d 53, 60 [195 P.2d 1]). ■ As stated in *Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 505 [134 Cal.Rptr. 668, 556 P.2d 1119]: "Two principles of statutory construction govern whether a statute . . . may be construed so as to avoid conflict with the Constitution. First, the enactment may be validated if its terms are reasonably susceptible to an interpretation consistent with the Constitution. [Citations.] Second, the court should construe the enactment so as to limit its effect and operation to matters that may be constitutionally regulated or prohibited."

■ Consistent with these tenets section 532 may be harmonized and reconciled with the Proposition 13 enactments by interpreting the statutory phrase "assessment year" in section 532 as the year when the base value of the property was determined pursuant to California Constitution, article XIII A and section 110.1. (See, *supra.*) ■ Since the record is clear that the base year value of the newly constructed warehouse was determined as of March 1, 1976, any error giving rise to escape assessments is deemed to have occurred at that time and therefore the statutory four-year period is

deemed to have commenced at that point, rather than later, when the alleged underassessment was discovered. It follows that in 1981 the assessor was not authorized to make escape assessments for the years in dispute because the four-year statute of limitations required such levy before March 1, 1980.

Second, this conclusion becomes inescapable when considered with section 80 which provides that the taxpayer has only four years from the original assessment in which to challenge an alleged overvaluation of the base value of newly constructed property (§ 110.1, subd. (a)(2)).[3] This section which under the cardinal rules of statutory interpretation must be read together with other sections of the code (*Candlestick Properties, Inc.* v. *San Francisco Bay Conservation Etc. Com.* (1970) 11 Cal.App.3d 557, 569 [89 Cal.Rptr. 897]; 2A Sutherland, Statutory Construction (4th ed.) § 46.05), clearly indicates that the Legislature intended to set a deadline for challenging the base year values outlined in section 110.1. Since section 80 allows the taxpayer four years from the time of the original determination of the base year value to file a challenge, elementary fairness requires that the county shall have only the same period of time within which to correct the base year values by way of escape assessments.

■ Third, there is yet another reason justifying our holding that the four-year statute of limitations set out in section 532 must run from the base year rather than from the assessment year. As respondent aptly demonstrates, a different interpretation of the section would lead to an illogical and absurd result. For instance, to give the assessor an open-ended opportunity to impose escape assessments without any time limitation would legitimate a scenario where a taxpayer who purchased property in 1980 could be called upon to challenge escape assessments levied 20 years later—at a time when documents might be lost, memory of witnesses faded and the impact of intervening price changes, inflation, etc., would make tracing difficult if not impossible to prove or disprove. Needless to say that an interpretation of a statute which would, or could, bring about such an unfair result is not reasonable. ■ It is blackletter law that the Constitution and statutes must

---

[3]Section 80 provides in pertinent part: "(a) *An application for reduction in the base year value of an assessment* on the current local roll *may be filed* during the regular filing period for that year as set forth in Section 1603 or Section 1840, subject to the following limitations: . . . [¶] (2) The base year value determined pursuant to paragraph (1) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base year value unless an equalization application is filed no later than the regular filing period following the 1980 lien date. Once an application is filed, the base year value determined pursuant to that application shall be conclusively presumed to be the base year value for such assessment. [¶] (3) *The base year value determined pursuant to paragraph (2) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base year value, unless an application for equalization is filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years.*" (Italics added.)

receive practical, common sense construction (*County of Alameda* v. *Sweeney* (1957) 151 Cal.App.2d 505, 512-513 [312 P.2d 419]) and that an interpretation which would lead to an unreasonable result or absurdity must be avoided. (*Armstrong* v. *County of San Mateo, supra,* 146 Cal.App.3d at p. 615; *County of San Mateo* v. *Booth* (1982) 135 Cal.App.3d 388, 396 [185 Cal.Rptr. 349].) ▮ As succinctly stated in *Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532]: "Statutes should be interpreted so as to achieve a result that is reasonable and that comports with the apparent purpose and intent of the Legislature. (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17].) '[W]here uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation [citations]; its apparent purpose will not be sacrificed to a literal construction [citations]; . . .' (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181 [27 Cal.Rptr. 801].) *A practical construction is preferred to one that is technical and is required when the latter would lead to mischief or absurdity.* [Citations.]." (Italics added.)

In view of our preceding analysis and conclusion the additional issues raised by appellant need but a brief response. Appellant's contention that the Legislature's failure to specify a final time limit for imposing escape assessments on properties acquired post-1975 as contrasted to the statutory limitations set out for the pre-1975 properties (§§ 110.1, subd. (a); 532.3)[4] is evidence that no such limitation was intended as to the latter type of properties, calls for a twofold answer. ▮ One, contrary to appellant we read the cited code sections as an expression of legislative intent that the base year value of Proposition 13 properties can be changed and escape assessments thereon can be imposed only within the time span specified by the statute. ▮ Two, the failure of the Legislature to regulate the time period for escape assessments on the post-1975 properties may be regarded as silence which creates ambiguity in the statute. (*Armstrong* v. *County of San Mateo, supra,* 146 Cal.App.3d 597.) It is, of course, well settled that in case of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer. (*Gould* v. *Gould* (1917) 245 U.S. 151, 153 [62 L.Ed. 211, 213, 38 S.Ct. 53]; *Edison California Stores*

---

[4]Section 110.1, subdivision (c), reads in pertinent part: "Notwithstanding Section 405.5, for property which was not purchased or newly constructed or has not changed ownership after the 1975 lien date, if the value as shown on the 1975-76 roll is not its 1975 lien date base year value and if the value of that property had not been determined pursuant to a periodic reappraisal under Section 405.5 for the 1975-76 assessment roll, a new 1975 lien date base year value shall be determined at any time until June 30, 1980 . . . ."

Section 532.3 provides that "Notwithstanding Section 532, any property which was underassessed for the 1975-76 fiscal year may be assessed, provided that the assessment is made on or before June 30, 1980."

v. *McColgan* (1947) 30 Cal.2d 472, 476 [183 P.2d 16]; *Wells Fargo Bank* v. *Cory* (1980) 110 Cal.App.3d 242, 250 [167 Cal.Rptr. 778].)

Appellant's additional argument that we must give weight to the interpretation of the State Board of Equalization which held the escape assessments at issue valid, may be addressed summarily. ■ While it has been said that the contemporaneous construction given to a statute by administrative officials charged with its enforcement and interpretation is entitled to considerable weight, it is well settled that such interpretation should be followed only if it is not erroneous (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]); and that the final responsibility for the interpretation of the law rests with the courts, not with the administrative agencies (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]; *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 124 [100 Cal.Rptr. 69]; accord *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 820 [164 Cal.Rptr. 739]). The Equalization Board's interpretation of section 532 simply does not withstand legal scrutiny; consequently, we are disinclined to follow it.

Finally, we observe that *Schoderbek* v. *Carlson* (1984) 152 Cal.App.3d 1027 [199 Cal.Rptr. 874], the primary authority cited by appellant, supports rather than defeats the conclusion here reached. *Schoderbek* did not address the statute of limitations problem; it held only that property constructed or purchased after March 1, 1975, must be assessed at the completion of the construction or at the date of purchase. As the court stated, "We find, therefore, that for properties which were sold after March 1, 1975, and had only lien date values between 1975 and 1979, it was proper for the county assessor to go back and calculate the value of those properties, as of the actual date of purchase" because after Proposition 13 "all real property will be assessed and taxed at its value *at date of acquisition* rather than at current value . . . ." (At p. 1036, original italics.) This language but reaffirms our fundamental assumption that in imposing escape assessments the base year value of the property is controlling.

The judgment is affirmed.

Poché, J., and Channell, J., concurred.

A petition for a rehearing was denied April 18, 1986, and appellant's petition for review by the Supreme Court was denied June 26, 1986.