[No. H006331. Sixth Dist. Jan. 10, 1991.]

BLACKWELL HOMES, Plaintiff and Respondent, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

## COUNSEL

Steven M. Woodside, County Counsel, and Karen E. Heggie, Deputy County Counsel, for Defendant and Appellant.

Stark, Wells, Rahl & Schwartz, Merrill J. Schwartz and May Lee Tong for Plaintiff and Respondent.

OPINION

**COTTLE, J.**—In this action to recover property taxes paid under protest, the trial court granted the taxpayer's motion for summary judgment. The court held that the statute of limitations set forth in Revenue and Taxation Code section 532,[1] as construed by the court in *Dreyer's Grand Ice Cream, Inc. v. County of Alameda* (1986) 178 Cal.App.3d 1174 [224 Cal.Rptr. 285], barred the county assessor from levying escape assessments for the previous four years. County of Santa Clara (County) appeals, contending *Dreyer's* does not apply to the facts of this case or, alternatively, if it does, its suggestion that the four-year statute of limitations commences on March 1 is contradicted by the statutory language which states it commences on July 1. We conclude that the levy of escape assessments in this case was timely and, accordingly, reverse the judgment granting taxpayer recovery of taxes paid.

FACTS

The case was submitted to the trial court upon the following agreed statement of facts:

"1.  Plaintiff owned the parcels of real property on which the escape assessments which are the subject of this action were made on the respective lien dates involved. Said parcels, being 33 in number, are referred to herein as 'the Parcels,' and said assessments are referred to herein as 'the Escape Assessments.'

"2.  A corporate reorganization occurred with respect to one of the partners of Blackwell Homes on July 31, 1982, which resulted in a change of ownership of the Parcels within the meaning of Rev. & Tax. Code § 110.1. Such change of ownership occurred on July 31, 1982, and plaintiff filed the statement of change of ownership of legal entities required by Rev. & Tax. Code § 480.1 in a timely manner.

"3.  On July 10, 1985, the State Board of Equalization notified the Santa Clara County Assessor's Office ('the Assessor') of the aforesaid corporate

---

[1] Unless otherwise specified, all further statutory references are to the Revenue and Taxation Code.

reorganization. The initial research as to the actual properties involved was done by the Assessor's Assessment Standards Division, and on dates ranging from August through November of 1986, that Division sent memoranda for each of the Parcels to the Assessor's Real Property Division. Plaintiff owned over 400 parcels in Santa Clara County as of the date of the aforesaid change of ownership in addition to the 33 parcels which are the subject of this action. Assessment appeals/claims for refund have been filed with respect to escape assessments subsequently levied with respect to some of said additional parcels, and said appeals/claims are being held in suspense pending the outcome of this litigation.

"4.  The Assessor's appraiser reviewed each of the Parcels, and completed the appraisal which established their base year values as of the March 1, 1983, lien date on February 25, 1987. Said appraiser's records and value conclusions were thereafter reviewed by the appraiser's supervisor during March, 1987, and notice of the proposed assessment roll corrections were sent to plaintiff on March 27, 1987.

"5.  The Parcels' new base year values were entered on the appropriate extended assessment rolls between April 4 and 10, 1987, and tax bills evidencing the resulting Escape Assessments for the 1983-84 base year and intervening tax years were received by plaintiff in April, 1987.

"6.  The base-year values determined and enrolled as aforesaid accurately set forth the full cash value of the Parcels as of the lien dates for which the Escape Assessments were made, and said determinations resulted in underassessment of each of the Parcels for the assessment years for which the respective Escape Assessments were made.

"7.  Plaintiff paid the property taxes which resulted from the Escape Assessments in the amounts and on the dates specified on the exhibits to plaintiff's complaint.

"8.  Plaintiff filed the claim for refund attached as Exhibit B to its complaint with the Santa Clara County Board of Supervisors on September 8, 1987, and said claim was thereafter amended by the amendment attached to plaintiff's complaint as Exhibit C. Said claim, as amended, complies with the provisions of Rev. & Tax. Code § 5096 and adequately raises the issue which is the subject of plaintiff's motion for summary judgment, to wit: whether the Escape Assessments were barred by the statute of limitations.

"9.  The Board of Supervisors failed to act on plaintiff's amended claim for refund within six months after the date of filing, thereby entitling plaintiff to file the complaint herein."

## DISCUSSION

### A. *Standard of Review*

█ In reviewing a grant of summary judgment when the issue on appeal is one of law, the court is free to draw its own conclusions of law from the undisputed facts. (*Milo Equipment Corp.* v. *Elsinore Valley Mun. Water Dist.* (1988) 205 Cal.App.3d 1282 [253 Cal.Rptr. 126].)

### B. *The Statutory Scheme*

The county assessor is required annually to discover all taxable property within his county, to assess it at its "full value" on the lien date (generally Mar. 1), to enter that value on the assessment roll, and to deliver the assessment roll to the auditor by July 1. (§§ 110, 110.5, 401.3, 405, 601-617, 2192.) "Full value" of real property was defined, prior to the adoption of Proposition 13 (Cal. Const., art. XIII A), as "fair market value" or "full cash value" or "the amount of cash or its equivalent which property would bring if exposed for sale in the open market . . . ." (§ 110.)

If the assessor, after certifying the assessment roll, found that a property had been assessed over or under its current fair market value, he could make adjustments in the form of refunds of taxes, if the property was overassessed, or in the form of additional tax billings, called escape assessments, if the property was underassessed. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942 [106 Cal.Rptr. 643, 506 P.2d 1019]; §§ 469, 531, 533.) These refunds or escape assessments could be issued for as many years as permitted by statute, usually four. (§§ 532, 4831.)

Proposition 13, which limited ad valorem property taxes to a maximum of 1 percent, changed the standard for determining the "full value" of real property. It limited full cash value to the lower of fair market value or the property's "base year value." (Cal. Const., art. XIII A, § 2, subd. (b); § 51.) Base year value was defined as the county assessor's valuation as shown on the 1975-1976 tax bill or, if the property was newly constructed or changed ownership thereafter, the fair market value as determined under previous law on the date of the purchase, new construction, or change of ownership. (Cal. Const., art. XIII A, § 2, subd. (a); § 110, 110.1.) Increases in the base year value were limited to a maximum of 2 percent per year. (Cal. Const., art. XIII A, § 2, subd. (b); §§ 51, 110.1, subd. (f).)

The Legislature provided that where 1975 base year values were incorrect, assessors had until June 30, 1980, to correct them (by reassessing the

property) and to levy escape assessments. (§ 110.1, subd. (c).) However, until 1988, the Legislature provided no guidelines to assessors for correcting post-1975 base year values which were incorrect due to a change of ownership or new construction. The Board of Equalization advised assessors they could correct post-1975 base year values whenever they discovered a change of ownership or new construction, but that escape assessments flowing from the correction would be limited to the last four years. (Ehrman & Flavin, Taxing California Property (1990 3d ed.) § 14:02, fn. 9, p. 14-9.)

### C. *The Dreyer's Opinion and the Legislative Response*

In 1986, the First District Court of Appeal held in *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda, supra,* 178 Cal.App.3d 1174, that a county assessor could not correct a post-1975 base year value where the correction was made more than four years after March 1, the lien date, of the year for which the base year value was first established.

In that case, new construction on a cold storage warehouse was completed in December 1975. The assessor physically inspected the warehouse and appraised it as of March 1, 1976, the lien date for the 1976-1977 assessment year. In late 1980, the assessor, during an audit, discovered a mistake which had resulted in underassessment for all years since 1976. On February 26, 1981, he revised the base year value and made escape assessments for the preceding four years. He did not seek escape assessments for the 1976-1977 fiscal year, which clearly was barred by the statute of limitations.

The court held that all the escape assessments were impermissible. It noted that Proposition 13 redefined the base year values of both pre-1975 and post-1975 properties and that those constitutional provisions could not be revised or altered under the guise of statutory escape assessment provisions. In order to harmonize and reconcile Proposition 13 with the escape assessment statute of limitations set forth in section 532,[2] the *Dreyer's* court interpreted "the statutory phrase 'assessment year' . . . as the year when the base value of the property was determined pursuant to" Proposition 13. (178 Cal.App.3d at p. 1180.) It therefore observed, "It follows that in 1981 the assessor was not authorized to make escape assessments for the years in dispute because the four-year statute of limitations required such levy before March 1, 1980." (*Id.,* at p. 1181.)

---

[2] Section 532 provides in pertinent part: "Any other assessment . . . shall be made within four years after July 1 of the assessment year in which the property escaped taxation or was underassessed."

The effect of the opinion was to prevent an assessor in perpetuity from reassessing property which had escaped assessment for more than four years from March 1 following the change of ownership or completion of new construction. The opinion did not distinguish between escape assessments involving real property, to which Proposition 13 applies, and those involving personal property, to which it does not apply. Section 532, however, applies to both real and personal property. Additionally, the opinion did not distinguish between cases in which the property completely escaped assessment and those in which the property was merely underassessed. And the opinion failed to distinguish situations where an assessor was attempting to correct base year values involving the assessor's judgment as to value from situations which did not involve the exercise of judgment. *Dreyer's* involved the former situation, but should its holding apply in other situations, such as where a taxpayer hides from the assessor a change of ownership until after the four years have lapsed?

To clarify the *Dreyer's* opinion, the Legislature enacted in 1987 (effective Jan. 1, 1988) legislation permitting assessors to correct on discovery any base year valuation or error not involving the exercise of the assessor's judgment. (§ 51.5, subd. (a).) In those cases, there is no limitations period to revise the base year value; however, escape assessments may be levied for only four years where there has been no taxpayer fraud. On the other hand, where the underassessment was the result of an "assessor's judgment as to value," any correction must be made "within four years after July 1 of the assessment year for which the base year value was first established." (§ 51.5, subd. (b).) Expressly excluded from the four-year limitations period are errors and omissions resulting from taxpayer fraud, concealment, misrepresentation or failure to furnish information, or assessor errors which "resulted in a base year value that was not intended by the assessor at the time it was determined." (§ 51.5, subd. (f)(2).) The Legislature reiterated that "assessment year" meant "assessment year" as defined in section 118, rather than, as *Dreyer's* held, the year when the base value of the property was determined. (§§ 51.5, 531.2, 532.) Section 118, enacted in 1939 and never revised, defines "Assessment year" as "the period beginning with a lien date and ending immediately prior to the succeeding lien date for taxes levied by the same agency." The Legislature expressly found and declared "that the provisions of law relating to escape assessments are in no way inconsistent with Article XIII A of the California Constitution. An escape assessment merely reflects the amount by which the property has been underassessed and is a mechanism which permits the correction of the effects of that underassessment. The amount of the underassessment must be determined, however, in accordance with the applicable statutory valuation standards. Thus, an escape assessment is merely a mechanism for implementing exist-

ing property tax law and cannot be in conflict with it." (Stats. 1987, ch. 537, § 1, p. 466 [No. 3 Deering's Adv. Legis. Service, ch. 537, § 1, p. 1547].)

D. *Application to this case*

Section 50 provides that "values determined for property which is purchased or changes ownership after the 1975 lien date shall be entered on the roll for the lien date next succeeding the date of the purchase or change of ownership." Here the change of ownership occurred on July 31, 1982, and the next succeeding lien date was March 1, 1983. Four years and one month after that lien date (in late March and early April 1987), the assessor corrected the assessment roll, notified plaintiff, and levied escape assessments for 1983-1984, 1984-1985, 1985-1986, and 1986-1987.

The sole issue on appeal is whether these escape assessments were timely. If we follow language in *Dreyer's*, they were not. *Dreyer's* held that "the statutory four-year period is deemed to have commenced" at the time "the base year value of the newly constructed warehouse was determined," i.e., on the lien date, March 1. (178 Cal.App.3d at pp. 1180-1181.) On the other hand, if we follow the statutory language, the assessments were clearly timely. Section 532 provides that escape assessments "shall be made within four years after July 1 of the assessment year in which the property escaped taxation or was underassessed."

For reasons we shall explain, we will not follow *Dreyer's*. ■ We do not believe that section 532 is now, or ever was, in conflict with Proposition 13. Accordingly, we reaffirm that escape assessments must be made *within four years of July 1*, not within four years of March 1, *of the assessment year*, as defined in section 118, *in which the property escaped taxation or was underassessed.*

Preliminarily, section 532 is completely unambiguous with respect to the day of the year, July 1, upon which the statute of limitations begins to run. We are not free to ignore this language. Since the property in this case was first underassessed in the 1983-1984 assessment year, the assessor had four years from July 1, 1983—i.e., until July 1, 1987—in which to levy escape assessments for the intervening years. Since the escape assessments here were levied before July 1, 1987, they were within the statutory period.

■ Secondly, we disagree with *Dreyer's* judicial rewriting of the definition of "assessment year" in section 532. The *Dreyer's* court believed it

was compelled to redefine "assessment year" because under pre-Proposition 13 law assessors reassessed property annually at full market value while under Proposition 13 assessors reassessed property only upon the occurrence of a triggering event such as change of ownership, purchase, or new construction. The *Dreyer's* court determined that "assessment year" was the year in which the new base year value of the property was first established. Accordingly, it held that escape assessments must be levied within four years after the base year's lien date. If the assessor missed the statute, he would be forever barred from levying escape assessments or correcting the base year valuation.

We question this reasoning. The statute says "assessment year" and "assessment year" has been defined since 1939 as "the period beginning with a lien date and ending immediately prior to the succeeding lien date for taxes levied by the same agency." Proposition 13 did not change this definition; it simply means from March 1 of one year to February 28 or 29 of the next year. In some of those assessment years, new base year values would be established; in others they would not.

Although the 1988 legislative amendments to sections 531.2 and 532 and the enactment of section 51.5 do not apply to this case because the escape assessments here were made in 1987, they buttress our belief that *Dreyer's* was incorrectly decided. The Legislature found "that the provisions of law relating to escape assessments *are in no way inconsistent* with Article XIII A of the California Constitution" and that "an *escape assessment is merely a mechanism for implementing existing property tax law and cannot be in conflict with it.*" (Stats. 1987, ch. 537, § 1, p. 466 [No. 3 Deering's Adv. Legis. Service, ch. 537, p. 1547], italics added.)

Thus, we conclude that for all cases arising before the enactment of the 1988 changes, the better rule to follow is to strictly adhere to the statutory language, permitting the levy of any escape assessment "made within four years after July 1 of the assessment year in which the property escaped taxation or was underassessed." (§ 532.) The assessor may revise base year values and levy escape assessments for the preceding four years, but no others, no matter when the underassessment is discovered. The only reasonable exception to this rule should be in the situation where the assessor has already had one "bite [at] the apple," i.e., where he has once exercised his judgment as to value of the property and now wants to change his mind. In that situation, we agree with *Dreyer's* and current legislation that he should do it within four years or not at all. However, even then, the assessor would have four years from July 1 of the assessment year in which the property escaped assessment.

The judgment is reversed. County is to recover its costs.

Agliano, P. J., and Premo, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 28, 1991.