[No. B110862. Second Dist., Div. Two. Feb. 25, 1998.]

METROPOLITAN CULINARY SERVICES, INC., Plaintiff and
Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

936

## COUNSEL

Weisman & Rosen, Peter K. Rosen and Kenneth G. Ruttenberg for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Albert Ramseyer, Deputy County Counsel, for Defendants and Respondents.

## OPINION

NOTT, J.—This appeal involves reassessment of possessory interest taxes. The paramount issue presented is: When the base year value of property (for possessory interest) has been overassessed, for how many years may a taxpayer receive a refund for taxes previously paid under the faulty assessment?

## FACTS AND PROCEDURAL HISTORY

Metropolitan Culinary Services, Inc. (MCS) appeals from a judgment entered in favor of respondent County of Los Angeles (the County) following the grant of a motion for summary judgment. We therefore review the record and determine this appeal in accordance with the customary rules of appellate review for a summary judgment. In sum, we will determine de novo whether, under Code of Civil Procedure section 437c, the County proved that it was entitled to summary judgment as a matter of law. (*Brantley* v. *Pisaro* (1996) 42 Cal.App.4th 1591, 1594-1602 [50 Cal.Rptr.2d 431]; *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

The basic facts are not in dispute. In October of 1992, MCS became the food and nonalcoholic beverage concessionaire at the Burbank airport. The County levied a possessory interest tax assessment against MCS for the fiscal years of 1992-1993 and 1993-1994.[1] When those assessments remained unpaid, the County seized the amount from the bank account of MCS.

In May of 1996, MCS informally met with the County to discuss the situation regarding possessory interest taxes. MCS contended that the County had incorrectly computed the base year value for 1992-1993, and that error had resulted in overtaxation for 1992-1993 and all subsequent years. According to MCS, the County agreed that there had been an overassessment, and corrected the method of calculation effective for the 1995-1996 assessment, but not as to the 1992-1993 or 1993-1994 assessments.[2]

On June 27, 1996, MCS filed applications for reductions of the 1992-1993 and 1993-1994 assessments and claims for refunds for both of those years.[3] The County denied the applications and the claims for refunds the next day.

On the day of the denial, June 28, 1996, MCS filed a complaint for refund of taxes. The basis of the complaint was that the County used an improper method of valuing the possessory interest of MCS, resulting in an overcharge of taxes for 1992-1993 and 1993-1994. The County filed an answer

---

[1] Under Revenue and Taxation Code section 107 et seq., the "possessory interest" in a lease of real property may be subject to taxation.

[2] The parties make no mention of the 1994-1995 year assessment.

[3] MCS used the standard preprinted forms provided by the County, which contained the designation "Application for Reduction of Assessment 1995/96 Filing." However, MCS drew a line through "1995/96" and inserted "1992/93" on one application and "1993/94" on the other.

which set forth several defenses, including the defense that MCS had failed to exhaust its administrative remedies.

The County's first motion for summary judgment was denied without prejudice. The second one was granted on the basis that by failing to make a timely claim for refund, MCS failed to exhaust its administrative remedies before the assessment appeals board, and was thus precluded from maintaining an action on the claims.

DISCUSSION

1. *The Pertinent Statutes*

Before proceeding to the analysis of the various contentions of the parties, it will be helpful to first set forth the relevant statutes and case law regarding reassessment of property taxes.

In 1978, the California electorate enacted Proposition 13 (Cal. Const., art. XIII A) in an effort to place a brake on what was becoming an unaffordable annual upward spiral in property tax assessment.

California Constitution article XIII A resulted in ad valorem property taxes (including possessory interest taxes) being mandatorily reassessed at the lower of fair market value or "base year value."[4] "Base year value" is defined as the county assessor's valuation as of the 1975-1976 tax year. Any inflationary increase in value is limited to a maximum of 2 percent per year. (*Montgomery Ward & Co.* v. *County of Santa Clara* (1996) 47 Cal.App.4th 1122, 1129 [55 Cal.Rptr.2d 261].)

Using the base year value as a starting point, under Revenue and Taxation Code[5] section 51, the taxable value of real property is annually adjusted upward or downward, depending on market conditions.

Absent certain limited exceptions not applicable here, a change in base year value will occur upon the transfer of property ownership. Such a transfer requires a reassessment. The assessor will then issue a supplemental tax assessment, which could have the effect of either increasing or decreasing future property taxes, and could also set the stage for a refund to the

---

[4]The term "base year" is sometimes hyphenated in the statutes and cases. We opt for the way the term is presented in California Constitution article XIII A, as unhyphenated.

[5]Unless otherwise stated, all further statutory references are to the Revenue and Taxation Code, with the exception that article XIII A always refers to that provision of the California Constitution.

taxpayer or an additional tax bill (i.e., escape assessment). (*Montgomery Ward & Co.* v. *County of Santa Clara, supra,* at p. 1129.) Thus, while property is assessed each year, there is only one year in which a base year is established. (*Id.,* at p. 1136.)

Prior to 1988, if an assessor found that property had been overassessed or underassessed, the assessor could provide for a refund (in the case of an overassessment) or for an escape assessment (in the case of an underassessment). (*Blackwell Homes* v. *County of Santa Clara* (1991) 226 Cal.App.3d 1009, 1013 [277 Cal.Rptr. 251].) Under sections 532 and 4831, an escape assessment could generally be issued for the past four tax years. (*Blackwell Homes* v. *County of Santa Clara, supra,* at p. 1013.) However, after the advent of Proposition 13, a question arose as to exactly what event triggered the commencement of the four-year period of limitation.

The answer came in the case of *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174 [224 Cal.Rptr. 285]. In *Dreyer's,* Division Four of the First Appellate District held that the triggering event was the *lien date* of the year the base year was established, rather than of a subsequent assessment year. (*Id.,* at p. 1179.)

In a response to *Dreyer's,* the Legislature enacted section 51.5 in 1988.[6] (*Blackwell Homes* v. *County of Santa Clara, supra,* 226 Cal.App.3d at p. 1015.) Section 51.5 provided specific authority for reassessment where it was found that the base year value was inaccurately or inappropriately calculated, or where the property had escaped any valuation at all. In sum, section 51.5 allows:

1. Under section 51.5, subdivision (a), reassessment of the base year value where there has been an error or omission that *was not* based on an

---

[6]Section 51.5 provides, in pertinent part: "(a) Notwithstanding any other provision of the law, any error or omission in the determination of a base year value pursuant to paragraph (2) of subdivision (a) of Section 110.1, including the failure to establish that base year value, which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered. [¶] (b) An error or an omission described in subdivision (a) which involves the exercise of an assessor's judgment as to value may be corrected only if it is placed on the current roll or the roll being prepared, or is otherwise corrected, within four years after July 1 of the assessment year for which the base year value was first established. [¶] (c) An error or an omission involving the exercise of an assessor's judgment as to value shall not include errors or omissions resulting from the taxpayer's fraud, concealment, misrepresentation, or failure to comply with any provision of law for furnishing information required by Sections 441, 470, 480, 480.1, and 480.2, or from clerical errors. [¶] (d) If a correction authorized by subdivision (a) or (b) reduces the base year value, appropriate cancellations or refunds of tax shall be granted in accordance with this division. If the correction increases the base year value, appropriate escape assessments shall be imposed in accordance with this division."

assessor's judgment, e.g., taxpayer fraud or clerical error. There is no limitation period for reassessment under subdivision (a).

2. Under section 51.5, subdivision (b), reassessment of the base year value where there is an error or omission which *does* involve the exercise of an assessor's judgment. There is a limitation period of four years from July 1 of the year the base value was originally established.

3. Under section 51.5, subdivision (d), if a correction under subdivision (a) or subdivision (b) results in a reduction of base year value, the taxpayer is entitled to refunds. Conversely, if the correction increases the base year value, escape assessments are required to be issued.

■■■ The present case apparently involves a situation under section 51.5, subdivision (b), in that an assessor exercised discretion in initially setting the base year value for MCS. Therefore, under that statute, MCS had four years from July 1 of 1992, to request correction of the base year value. It did so, by making its request before July 1 of 1996. However, a revaluation for the base year does not end the problem. Still left to be resolved is whether MCS can receive a refund or refunds.

The County says no, in that under section 1603, MCS was required to file its request for a refund for the 1992-1993 year by September 15, 1992, and for the 1993-1994 year by September 15, 1993.[7]

However, we do not believe section 1603 is controlling. That section deals in general with applications for reductions in assessment. Rather, the applicable statute is section 80, which specifically deals with reductions in base year value.[8]

In 1988, at the same time section 51.5 was enacted, section 80 was amended to add a four-year limitation period in which to apply for a revision

---

[7]The relevant portions of section 1603 provide for three periods of limitation for filing an application for refund: (1) from July 2 to September 15 of the tax year involved; or (2) if the taxpayer did not receive the notice of assessment within 15 days of September 15, then the time for filing the refund is extended by 60 days from the date of mailing or receipt (whichever is earlier); or (3) within 12 months of notification of the assessment if both the taxpayer and assessor agree that there was an error in the assessor's judgment in determining the value, and that both sides have stipulated to the correct value.

We note that if section 1603 were to control, the claims by MCS would be late under any of the three time periods.

[8]Section 80 states, in pertinent part: "(4) The base-year value determined pursuant to Section 51.5 shall be conclusively presumed to be the base-year value unless an application for equalization is filed during the appropriate equalization period for the year in which the error is corrected or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment. [¶] (5) Any reduction in assessment made as the

of base year value under section 51.5. Significantly, however, the Legislature left standing subdivision (a)(5), which provides that "[a]ny reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter."

It therefore appears that even though a taxpayer has four years to challenge a base year value, the taxpayer can only receive a refund for the year in which the appeal is made, and thereafter. Virtually the same scenario was before the appellate court in *Sea World, Inc.* v. *County of San Diego* (1994) 27 Cal.App.4th 1390 [33 Cal.Rptr.2d 194] (hereafter *Sea World*), which we now examine.

### 2.   *The Sea World Case*

In November of 1989, the ownership of Sea World changed hands, triggering a reassessment under Proposition 13. On June 22, 1990, the assessor notified Sea World of the new base year value. In September of 1990, the assessor mailed Sea World a supplemental tax bill for 1989. On September 24, 1990, Sea World filed an application for equalization and refund.

On June 29, 1990, the assessor sent out an annual assessment for 1990. On September 14, 1990, Sea World filed an application for equalization and refund.

The assessment appeals board (AAB) rejected Sea World's 1989 claim as untimely, but granted a reduction in the base year value for 1990 and a partial refund of taxes for that year. The trial court affirmed the AAB's decision, and the appellate court affirmed the trial court.

The key ruling of *Sea World* which affects the case before us is the holding that section 51.5 did not expand the time limits for claiming a refund after the base year value was decreased. The appellate court there had the advantage of the legislative history of section 51.5, as well as interpretation from the State Board of Equalization, which the parties have not provided in the case before us. After a review and analysis of the history and contents of the relevant statutes, the appellate court in *Sea World*, 27 Cal.App.4th 1390, stated at page 1403: "Using these rules [of statutory construction] here, we conclude that although section 51.5 provides a procedure separate from

---

result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter."

section 80 for the correction of errors in base year values, that section, enacted to provide guidelines for county assessors in making base year value corrections, when viewed with the entire statutory scheme of which it is a part, does not override the prospective only application of section 80, subdivision (a)(5) for a reduced base year value determined as a result of a successful taxpayer's application for the reduction of such value."

We note that section 51.5 does not itself authorize a refund. Instead, it provides that "refunds of tax shall be granted in accordance with this division." (§ 51.5, subd. (d).) That language adds support to the conclusion that in leaving the language of section 80, subdivision (a)(5) intact, the Legislature intended that even though a taxpayer had four years to challenge a base year value, any refund is limited to the current year and " 'prospectively thereafter.' " (*Sea World, supra*, 27 Cal.App.4th at p. 1406.)

"There is a distinction between the reduction in a base year value and a right to a refund of taxes. The base year value is a control figure from which an assessment is determined. The correction of the base year value allows the assessor to determine whether there has been an overassessment or an underassessment. Thereafter, an application must be made for a refund. It does not follow that a reduction in a later year's base value requires a similar lowering of previous years' values." (*Osco Drug, Inc.* v. *County of Orange* (1990) 221 Cal.App.3d 189, 193 [272 Cal.Rptr. 14]; *Sea World, supra*, 27 Cal.App.4th at p. 1400.)

Citing *Osco*, the appellate court in *Sea World* stated that ". . . even assuming the assessor had corrected the 1989 base year value in this case because of a judgment valuation error, such correction would not have necessarily required the assessor to correct the assessment for that year." (*Sea World, supra*, 27 Cal.App.4th at pp. 1405-1406.)

With that background in mind, we now turn to the contentions of the parties.

### 3. *Exhaustion of Administrative Remedies Prior to Litigation*

Under section 5142, subdivision (a), "No action shall be commenced or maintained under this article unless a claim for refund has first been filed pursuant to Article 1 (commencing with Section 5096) of this chapter." ██ "Ordinarily a taxpayer seeking relief from an erroneous assessment must exhaust available administrative remedies before resorting to the courts. [Citations.]" *Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966].) ██ MCS makes no

tenable argument why it should be exempt from the foregoing rules, so we first proceed to analyze the parties' arguments as to whether MCS did or did not exhaust its administrative remedies before filing suit.

### a. *The Applications for Reduction in Base Year Value*

Initially, we will separately examine the applications for reduction of base year value (the applications) and the claims for refunds.

The County's first contention is that the applications filed by MCS were untimely. The County reasons that the relief sought by MCS to reduce the assessed value of its possessory interest is governed by section 1603, and the time limit for filing for relief under that section is a minimum of September 15 of the tax year involved to a maximum of one year from the notification of the assessment. Therefore, if section 1603 was the only basis for relief, MCS would have failed to make a timely request for relief, since both of its applications were outside even the maximum time limit of that section.

However, as we have set forth, under section 51.5, amendment of base year valuation may be made within either: four years of July 1 of the tax year involved (if the alleged error involved the discretion or judgment of the assessor); or without any limitation period at all if the alleged error was mechanical and did not involve the judgment or discretion of the assessor. Therefore, if the applications by MCS were made under section 51.5, they were timely since they were filed within four years of July 1 of 1992. (See *Sunrise Retirement Villa* v. *Dear* (1997) 58 Cal.App.4th 948, 958-959 [68 Cal.Rptr.2d 416].)[9]

The next logical question is whether the applications were filed under section 51.5; i.e., were they complete? The County argues that they are not because there was no reference in those documents that MCS was relying on section 51.5.

---

[9]*Sunrise* involves a scenario where the property was reassessed in 1986 due to a purported change in ownership. In 1994, the taxpayers allegedly discovered facts which showed that ownership did not change. Faultily relying on an inappropriate subdivision of section 80, the AAB refused to hear the appeal on the basis that the time limitations for an application to change base year value had expired. The taxpayers contended that under section 51.5, subdivision (a), there was no time limit to correct such an error. The taxpayers filed an action requesting the issuance of a writ of mandate. The trial court granted the petition, and simply ordered the base year changed. The Court of Appeal agreed that despite any provisions in section 80 to the contrary, the taxpayers had an unlimited period of limitations to request a reassessment of base year value under section 51.5, subdivision (a). However, the appellate court said that initial jurisdiction to determine whether an error occurred under section 51.5 was with the AAB. Thus, the matter was remanded back to the trial court to in turn send the case back to the AAB for a hearing on the merits.

The applications filed by MCS for 1992-1993 and 1993-1994 were identical. They were on preprinted County forms that leave little room for an applicant to state any information. Nowhere in the form is there a requirement that the applicant state the particular statute being relied upon for reassessment. MCS asserts, and the County does not contest, that there is no preprinted form specifically designed for a challenge under section 51.5. Accordingly, MCS was forced to make do with the form which is contained in the record before us.

For this appeal, the most critical part of the form is section 6. That section is entitled, "Reasons for Request in Change in Value." An applicant is given a menu of seven preprinted reasons from which to check off one or more choices.[10] Only the seventh option, entitled "LEGAL ISSUE," gives the applicant room to reply.

MCS checked off 6F ("Assessor's value of personal property and/or fixtures is incorrect") and 6G ("LEGAL ISSUE"). In the two-inch blank line that was provided, MCS wrote in "Assessor's improper method of calculation." Even though it would have been prudent for MCS to set forth the statute on which it was relying, there is hardly room on the form to do so. We hold that the reason provided by MCS in the answer to section 6G was sufficient to put the County on notice that an appeal was being taken under section 51.5. Further, as will be discussed in the next section, the exhibits attached to the claims for refunds expound on the bases for the appeal to the AAB.

The County next takes the position that the reassessment for 1995-1996 was made under section 51 and not under section 51.5. However, resolution of that question would require a factual determination at the trial court level. The parties did not argue that precise issue to that court, and the record before us is silent as to why the County voluntarily reassessed the possessory interest for 1995-1996. While it might ordinarily be appropriate for us to order a remand for the AAB to make the threshold finding as to whether MCS is entitled to relief under section 51.5, we shall not do so for two reasons.

---

[10]The options available under section 6 are:

"A. Assessor's value exceeds market value on transfer date of ____.

"B. Assessor's value exceeds market value on date of completion of new construction.

"C. DECLINE IN VALUE. Assessor's value exceeds full cash value on March 1st of the current year.

"D. Assessor's appraisal due to 'Change in Ownership' not justified . . . .

"E. Penal assessment not justified . . . .

"F. Assessor's value of personal property and/or fixtures is incorrect.

"G. LEGAL ISSUE _____."

The first reason is that, contrary to *Sunrise Retirement Villa* v. *Dear, supra,* 58 Cal.App.4th 948, MCS did not request a writ of mandate. Instead, it simply filed a claim for refund. Under the pleadings, we would therefore be hard-pressed to devise a procedural rationale that would allow a remand to the trial court to in turn remand to the AAB.

The second and more compelling reason is that even if the County's voluntary reassessment for 1995-1996 was (or should have been) made under section 51.5, that fact will do MCS no good if a reduction in base year value only becomes effective in the year in which application for relief was made. In other words, even if the applications would have been granted under section 51.5, the applications were made in 1996. If section 80, subdivision (a)(5) controls, any reduction in base year value only applies to the assessment year in which the appeal was taken and prospectively thereafter. There would be no basis on which to obtain a refund for any year prior to 1995-1996.

We now turn to the core of this appeal, which is whether the operation of section 80, subdivision (a)(5) controls the outcome here.

### b. *The Claims for Refunds*

■ Section 5142, subdivision (a) provides that "[n]o recovery shall be allowed in any refund action upon any ground not specified in the refund claim." The County argues that the claims for refund were silent as to any reliance on section 51.5, and therefore MCS may not urge reliance on that section to either the trial court or to us. We disagree.

The claims for refunds were made on a standard claim form provided by the County. In the middle-top portion of the form is a box entitled "Reason for refund claim," with approximately one and one-half inch of space for an answer. In this box, MCS responded with the words: "See attached letter marked Exhibit B." The letter is dated June 24, 1996, from the county counsel to the attorney for MCS. The pertinent part of that letter acknowledges that MCS will file appeals and/or litigate the disputed assessments and collections for 1992-1993 and 1993-1994. Attached as a further exhibit B was a two-page document stating the position of MCS, which details the belief of MCS that the assessor's method of base year valuation was incorrect.

We hold that the claims for refunds with the attached exhibits were detailed enough to put the County on notice that the claims involved the incorrect method of assessment of the initial base year value of the possessory interest of MCS, which is specifically within the purview of section 51.5. Accordingly, we reject the County's argument that the ground for recovery was not stated in the form for claim of refund.

However, far more crucial is the question of whether the claims for refunds were timely filed.

As previously noted, there is the potential for conflict between section 51.5 and section 80, subdivision (a)(5) on the subject of taxpayer refunds. Under section 51.5, subdivision (d), "[i]f a correction authorized by subdivision (a) or (b) [of section 51.5] reduces the base year value, appropriate cancellations or refunds of tax shall be granted in accordance with this division." Since that statute speaks in plurals (cancellations or refunds), an argument can be made that the Legislature intended the taxpayer and the assessor to be on equal footing when it comes to refunds on the one hand, or escape assessments on the other.

Unfortunately for MCS, section 80 is part of the same statutory division as section 51.5, and thus qualifies as being part of the "this division" wording of that latter statute. Section 80, subdivision (a)(5) is crystal clear that any reduction in assessment of base year value shall apply only to "the assessment year in which the appeal is taken and prospectively thereafter." It therefore follows that if section 80, subdivision (a)(5) controls, the only claim for refund that can be made is for the year in which the appeal was taken. In the case before us, that would be 1995-1996. However, MCS made no claim for refund for that year.

We have previously discussed *Sea World* and its impact on this matter. We believe *Sea World* is on point and we reluctantly agree with its holding. At the very same time that it enacted section 51.5 and amended section 80, the Legislature had the opportunity to amend section 80, subdivision (a)(5) and chose not to do so. We are unpersuaded that such action (or inaction) was due to oversight rather than intent. *Sea World* is now over three years old. If leaving section 80, subdivision (a)(5) in place was due to error, the Legislature has had ample opportunity to make a correction and has chosen not to do so.

At first blush, it would seem inequitable to allow an assessor to collect four years of escape assessments under section 51.5 (*Montgomery Ward & Co.* v. *County of Santa Clara, supra,* 47 Cal.App.4th 1122, 1136) and yet allow a taxpayer only one year of refund. However, the parties have not seen fit to provide us with the legislative history of section 51.5 or section 80, so we will not attempt to second-guess the rationale behind such an apparently one-sided arrangement. It does occur to us that, generally speaking, a taxpayer has only a few parcels of property with which to be concerned, and has a personal financial interest to annually make sure such property was

correctly assessed. On the other hand, many counties have literally thousands of parcels of property to assess each year, and due to such numbers and budgetary constraints, may not have the ability to always accurately police themselves. Further, as the County points out, it and other counties have to annually create budgets that are as precise as possible. Allowing refunds for four years for which no reserve is in place might well have a substantial negative impact on the financial abilities of some or all the counties in this state.

We conclude that any reduction in base year value that should have been made would only be applicable for the year MCS made its claim, to wit, 1995-1996. Accordingly, MCS could only receive a refund for that year. MCS did in fact receive a reduced assessment for 1995-1996, and has not challenged the sufficiency of that new assessment nor made a claim for refund for that year. Thus, the judgment by the trial court must be affirmed. MCS failed to exhaust its administrative remedies by making a timely claim for refunds. In the alternative, the application of section 80, subdivision (a)(5) constitutes a complete defense. Even though that latter ground was not specifically relied upon by the trial court, a judgment that is correct for any reason, stated or unstated, will be upheld on appeal. (*Brown* v. *State of California* (1993) 21 Cal.App.4th 1500, 1506 [26 Cal.Rptr.2d 687].) The County raised that ground as part of its motion for summary judgment, so MCS cannot claim surprise.

### DISPOSITION

The judgment is affirmed. The parties are ordered to bear their own respective costs on appeal.

Boren, P. J., and Zebrowski, J., concurred.